Nelson, D. J.
This suit was brought under the statutes of Minnesota to quiet the title to certain real estate situate in the county of Ramsey, in said state. The fee of the land was in the defendants’ testator at the time of his decease, and had been since the year 1855. The plaintiffs claim title by gift from the deceased, and that possession was given to them, without a deed, in 1855; also by devise under a holographic will executed by their testator May 26, 1856, in Adams eounty, in the state of Mississippi. The defendants set up title under the same will, and a codicil thereto executed September 10, 1862. The case is put at issue by proper pleadings, and is submitted to the court without a jury.
The defendants prove their title by will, which is met by opposing title of plaintiffs attempted to be shown as before stated by gift, and also by adverse possession under the statute of limitations, and finally by special devise under the will through which the defendants claim.
It is urged by the defendants that the special devise in the will of the land in controversy to the plaintiffs is revoked by the codicil. If it is not, then there can be no doubt about the plaintiffs’ title. The following is the will and codicil:
“I, Samuel S. Boyd, of the county of Adams and state oí Mississippi, do make, ordain, and publish this my last will and testament, revoking all others, and this being all in mj own handwriting and containing ten pages of manuscript:
*139 “1. I direct my whole estate existing at the time of my decease — real, personal and' mixed, private and partnership —to be kept together, managed, controlled, disposed of, and distributed as hereinafter directed.
' “2. I give to my beloved wife and children the use of my Arlington property in Natchez, or such other dwelling-house as may be our usual family residence at the time of my death, to be so held during the life of my said wife, at all events, and after her death for the use of such of our children as may survive her, until such survivor or survivors marry or arrive at the age of 21 years. With said residence I include all the furniture, carriages, horses, servants, and other things appurtaining thereto, and in the ordinary use of the family. So far as the children are concerned this right to cease as each arrives at the age of 21 years or marries. And for the support, education, and maintenance of my said family, under this clause of my will, as well as for keeping up said establishment, I direct my executor, hereinafter named, to apply a gross sum not exceeding $10,000 per year, and an additional sum not exceeding $2,000 per year for the sole and separate use of my wife, all without accountability or charge to them on the final settlement of my estate, and. to come out of the income or profits of my estate. It is also my desire and intention that my beloved sisters-in-law, Aim and Maria Wilkins, remain in the use of said residence as long as any of the family occupy it under this clause of my will.
“3. As each of my children become of age (21 years) or marry, I direct the above allowance of $10,000 to be diminished $2,000 per year, and so also should any of them die.
“4. As each of my children become of age or married I give to such child the sum of $50,000, to be invested by my executor in productive property — land and slaves preferred— for the sole and separate use of such child forever; but if such child should die without issue surviving, then and in that case this devise to return to my estate and be distributed as hereinafter directed.
“5. The investments and disbursements hereinbefore directed are to come from the income and profits of my estate; *140 that is — First,, from the income and profits of my private and individual estate; and, secondly, from the income and profits of my partnership estates, as hereinafter named and indicated; and in the last case whatever amount is taken from the proceeds of the partnership property, a like amount is to be deducted and transferred to the private and individual account of the surviving partner.
“6. It is the understanding and agreement between me and my partner, Eice C. Ballard, that the planting partnership alluded to above shall be continued, notwithstanding the death of either partner, for the period of 12 years from the first of January, 1856, in the same way and with the Bame force, authority and right in the survivor as if both were living; and I therefore direct that at that time, or as soon thereafter as all the partnership debts are paid, the whole of our said partnership as it may then exist, and wherever it may be, shall be divided into two equal parts, any necessary inequality to be made equal by money, and the part then belonging to my said estate and to my said partner, or his estate, if he be dead, to be ascertained by lot; and thereupon I direct all my property, of all kinds and descriptions, be divided into as many equal parts or shares as will correspond to the number of my surviving children and wife, counting my wife as a child for this purpose, and my said estate I give and bequeath to them in said shares, the share of each to be ascertained by lot, each share being made equal to the other, as in the above case, and each to have an equal share thereof, as aforesaid, in absolute estate and forever, my wife included. Should any of my children die before said distribution is made, leaving issue surviving at the time of said distribution, then such issue are to take the place of such deceased child; and after said distribution should either of my said children die leaving no issue surviving, I direct that the share of such child shall be distributed equally among the surviving brothers and sisters of such child.
“7. In order that my said partner surviving me may be freed from embarrassment in the management of our partnership affairs till the time of the aforesaid division, I state *141 that he has full power as survivor, without regard to any power as executor, to manage and control all our partnership property and effects, and the proceeds thereof to invest in further purchases of any kind for the benefit of our said partnership, and to increase and extend the same, and to manage and dispose of the same, and to sell or exchange any portion thereof, if deemed most advantageous by him for the benefit of our said partnership, as we could do if both were living, it being my preference that land and slaves be preferred in purchasing, especially in regard to the proceeds of any sales of land or slaves by my said partner.
“8. In regard to the division of said partnership property between said Ballard and my estate, I direct the probate judge of Adams county, for the time being, under his private seal, to nominate one judicious and disinterested person, who shall act with such other as may be appointed by and on behalf of said Ballard, or his estate, in making said division, and should they not agree then the two to select a third man as umpire, and the conclusion thus arrived at, in either way, shall be final. In regard to the division herein provided for of my estate among my children and wife, I direct my executor to make a like selection of suitable persons to make the same. In regard to both of said divisions, I mean and intend by the above to include the appraisement of the shares, as well as the actual process of division by lot.
“9. I appoint my friend Bice G. Ballard my executor, with full power to carry into effect each and every clause of my will, and to manage and employ for the benefit of my estate all my property, and the income thereof; to invest the same and the proceeds thereof, and to sell or exchange any part thereof, and to re-invest the .same as he may deem most advantageous to my said estate; and such sales, purchases and investments he may make publicly or privately, and with or without any .order of court, as he may prefer. He may settle, adjust, and compromise all claims and demands against me or my estate, but not to pay any money demanded barred by the statute of limitations, unless he knows the same to be due and correct; and to assist him in the proper performance of his *142 duties I request my friend Alexander Montgomery to advise freely with him, with my family whenever called on, and in case of the death of said Ballard before the full execution of the trusts herein I appoint him my executor, with like powers as are given to said Ballard.
“10. I appoint my beloved wife guardian to my children, and direct that she give.-no bond as such guardian; nor shall said Ballard, as executor or surviving partner, nor said Montgomery, should he become my executor, be required to give-any bond or security.
“11. As I now have, and expect to have, property in several states, and have made my will in a spirit of impartial justice and equal kindness to all interested in my estate, I direct that if my wife or my children, or either' of them, refuse to abide by said will, then such one or more refusing shall have no part of my estate, except what is in the state of Louisiana, and such share in that estate as the law will give them alone, and the final division of my estate is to be made accordingly, and the provisions of my will carried out in all respects.
"12. Three years after my decease I give to my wife the sum of $50,000, if she desire it, which is to be invested by my executor for her sole and separate estate forever, land and slaves preferred, and thenceforth the allowance of $2,000 provided for her annually in the second clause of this will is to cease, and the amount herein given is to come out of the income and profits of my estates.
“13. By way of exception to.the sixth clause of this will I give to my brothers Edward and Walter my lands on which they reside in Minnesota territory; and to my brother B. S. Boyd I give my interest in the estate of my father belonging to me to assist him in purchasing the family mansion in Portland, Maine, now occupied by Mrs. Merrill; and to my sister, Mrs. Merrill, of said Portland, I give the sum of $250 a year during her life. I direct my —■— in Woodville, and my wild lands in Warren, Washington, Yazoo counties, to be sold and the proceeds re-invested.
“14. As I have acted for several years as agent for my sisters Ann and Maria Wilkins in managing their affairs, it *143 is proper to state that all their funds will be found in the hands of my merchants in New Orleans, invested in commercial paper, except what stands in their own names on the books of W. A. Britton & Co., in Natchez. The account in New Orleans, for convenience, is headed ‘S. S. Boyd Agency.' Some further statements on this subject (if more is desired) will be found in my letters in my iron chest at my office, accompanying a previous will, addressed to F. B. Ernest, which I refer to, not to make it a part of my will, but simply for private reference and satisfaction.
“15. For the information of my family I state that the partnership property referred to herein consists, in prmsenti, of the following plantations, including the slaves and all other things belonging thereto, i.e., ‘Magnolia,’ ‘Lipun,’ ‘Karnae,’ ‘Elclio,’ and ‘Cut Post,’ with some wild lands adjoining Karnae and a lot under the hill in Natchez. The state of the accounts of each of these places will appear by the books of our merchants in New Orleans, and have always been so kept as to show the payments made by each of us, and the debits and credits entered accordingly as between us, or each of us, and said places respectively, and no account between us individually in respect to any partnership matter ever having been kept or intended. For any matters not appearing on said books the private memorandum books and papers of each other have always been and are to be taken as true.
[seal.] “Sam. S. Boyd.
“Executed and published under hand and seal this twenty-sixth May, 1856.”
Codicil to the will of S. S. Boyd, deceased:
"I, Samuel S. Boyd, of the city of Natchez, do make and publish this by way of a codicil or additional clause to my last will and testament, the same being wholly written in my own handwriting:
“I appoint my friend Martin Davis my executor in place of E. C. Ballard, deceased, with same power and authority in all respects, both as to my will and the will of said Ballard; and I make the following alteration of my said will: that is to say, *144 as soon as a division can be had of the partnership property, etc., of said Ballard and myself, and my debts and liabilities are paid, I direct my executor to have all my estate, except the Arlington property, divided between my wife and children in equal parts, share and share alike. The Arlington property I direct to be left for the use of my said wife and such of our children as she may choose to have with her during her natural life, and after that to be divided to and among my said children like the rest of my estate as above; and if my wife, at any time, declines to hold said Arlington property in the way herein directed, then it is to be divided as above among my wife and children, which can be effected by sale or as my executor may think best. In case of the death of said G. M. Davis before the final settlement of my estate, I appoint my friend Judge Alexander Montgomery my executor, with the same power and authority; and I revoke so much of my said last will and testament as may be inconsistent herewith. I request that my executor employ T. H. Thistle, as far as assistance may be necessary, in the same way I have employed him.
“Written with my hand, executed and published this tenth September, A. D. 1862.
“Witness my hand and seal.
[seal.] “Sam. S. Boyd.”
The will and codicil are drawn with care, and evidently the testator was a skilful draftsman, using unequivocal and plain terms to declare his intention. In the codicil he makes no change in his bequests. The will specifically devised his estate, and with such devises he is satisfied; but when and in what manner the estate devised to his wife and children shall be divided the testator, for some reason, determines that a change should be made, and he alters the will in that regard by the codicil. He revokes the will only wherever it may be inconsistent with the codicil in that respect. In no part of this codicil does he use the words “devise and bequeath,” but studiously avoids any words which would, of themselves, necessarily import a devise. The widow and children take the *145 property, not by virtue of the codicil, but under the will, through which title passes to them.
The testator is presumed to have used words in their natural sense, and when in the codicil he authorizes the executor to divide all of his estate, etc., it cannot be said that the words imported devise all his estate and authorized the executor to divide it, when by such construction a radical change would take place in the will, and bequests be revoked which were made by express terms. The intention of the testator is to be gathered from the will and codicil; both must be construed together. The words “divide” and “devise” are both used in the will — the former confined to an act to be done by the executor — and it would be a strained construction to say that in the codicil the testator intended by the use of the word “divide” to do more than authorize a change in the division of that portion of the estate already devised by the will to the widow and children.
I see no ambiguity in the language of the codicil, and its terms are not inconsistent with the special devise of the Minnesota land to the plaintiffs. Having arrived at this conclusion, it is unnecessary to consider the case any further.
Judgment for plaintiffs.